# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| D.B., | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION FILE NO.: |
| | : | |
| v. | : | _____ |
| | : | |
| | : | |
| LINCOLN BANCORP LLC, | : | **JURY TRIAL DEMANDED** |
| d/b/a SUPER 8 BY WYNDHAM; | : | |
| AND, LINCOLN PROPERTY | : | |
| MANAGEMENT LLC, | : | |
| | : | |
| Defendants. | : | |
| | : | |

---

## COMPLAINT

---

Matthew B. Stoddard
Carson L. Wynn
THE STODDARD FIRM
1534 N Decatur Road
Atlanta, GA 30307
P: 470-467-2200
matt@legalhelpga.com
carson@legalhelpga.com

**Attorneys for Plaintiff**

1

# TABLE OF CONTENTS

Introduction ..................................................................................................3

Procedural Issues ...........................................................................................4

Sixteen-Year-Old D.B. Is Trafficked For Sex at the Super 8...................................6

Defendants Had Extensive Knowledge of Trafficking at the Super 8 ....................10

    A.   The Industry Knowledge........................................................................10

    B.   The Online Reviews..............................................................................14

Defendants Had Constructive Knowledge That D.B. Was Being Trafficked.........15

COUNT 1: TVPRA Civil Beneficiary Claim .......................................................17

COUNT 2: Premises Liability Claim ..................................................................20

COUNT 3: Nuisance Claim ..............................................................................22

Causation and Damages .................................................................................22

Statute of Limitations .....................................................................................24

Prayer for Relief.............................................................................................24

## INTRODUCTION

1. This case involves the sex trafficking of a minor, D.B., at a hotel in College Park, Georgia.

2. The hotel at issue is the Super 8 by Wyndham located at 4979 Old National Highway in College Park, Georgia (the "Super 8").

3. From December 30, 2019, until December 6, 2021, Defendant Lincoln Bancorp LLC d/b/a Super 8 by Wyndham ("Bancorp") owned and operated the Super 8.

4. At all relevant times, Defendant Lincoln Property Management LLC ("Lincoln") operated and managed the Super 8 located at 4979 Old National Highway, College Park, Georgia

5. The Super 8 is and has been a notorious hotspot for illicit activity that has been attracting sex trafficking and prostitution ventures for years.

6. D.B. was trafficked at the Super 8 by Ashanti Coles ("Coles") from approximately June 20, 2020, until approximately December 30, 2020.

7. D.B. was only sixteen years old at the time Coles trafficked her at the Super 8.

8. Prior to D.B.'s trafficking, Defendants were on notice about the prevalence of sex trafficking, prostitution, drug-related crimes, and violent crimes at

the Super 8. Such notice came through publicly available information (such as its online reviews) and law enforcement activity at the Super 8.

9. Despite their knowledge, Defendants refused to take any action to deter sex trafficking.

10. In addition to their prior knowledge of frequently renting rooms for sex trafficking ventures generally, Defendants had constructive knowledge that D.B. was being trafficked at the Super 8 from approximately June 20, 2020, until approximately December 30, 2020, but Defendants continued to rent rooms to D.B.'s trafficker so that the trafficking could continue.

**PROCEDURAL ISSUES**

11. Given the nature of the case, D.B. is identified in this Complaint by her initials to prevent public disclosure of her name. Plaintiff's counsel has either previously disclosed D.B.'s full name to defense counsel or will immediately upon identification of defense counsel. When filing this Complaint, Plaintiff's counsel also filed a Motion for Protective Order seeking the Court's permission for D.B. to proceed anonymously. Upon information and belief, Defendants will consent to D.B. proceeding without publicly disclosing her name.

12. Plaintiff D.B. is a resident and citizen of Riverdale, Georgia, who is subject to the jurisdiction and venue of this Court.

13. Defendant Bancorp was a foreign limited liability company authorized to transact business in the state of Georgia with its principal place of business located at the site of the Super 8: 4979 Old National Highway in College Park, Georgia, 30067.

14. At all relevant times, Defendant Bancorp owned the property located at the foregoing address and was transacting business in the state of Georgia.

15. Defendant Bancorp withdrew its Certificate of Authority on or about January 11, 2022, stating that the entity no longer transacted business in Georgia. Defendant Bancorp still exists as a California limited liability company.

16. Defendant Bancorp can be served through its registered agent, Registered Agents Inc., at 8735 Dunwoody Place, Suite R, Atlanta, Georgia, 30350.

17. Defendant Bancorp was properly served with process in this matter.

18. Defendant Bancorp is subject to the jurisdiction and venue of this Court.

19. Defendant Lincoln was a domestic limited liability company with its principal place of business located also at the site of the Super 8: 4979 Old National Highway in College Park, Georgia, 30067.

20. Defendant Lincoln can be served through its registered agent, Registered Agents Inc., at 8735 Dunwoody Place, Suite R, Atlanta, Georgia, 30350.

21. Defendant Lincoln was properly served with process in this matter.

22.    Defendant Lincoln is subject to the jurisdiction and venue of this Court.

23.    Jurisdiction is proper in this Court under 28 U.S.C. § 1331 (federal question jurisdiction) because this matter concerns the Trafficking Victims Protection Reauthorization Act ("TVPRA"), which is a law of the United States.

24.    Venue is proper in this Court because a substantial part of the events or omissions giving rise to the claims asserted in this action occurred in Fulton County, Georgia, which is within the Northern District of Georgia's Atlanta Division. *See* 28 U.S.C. § 1391.

**SIXTEEN-YEAR-OLD D.B. IS TRAFFICKED FOR SEX AT THE SUPER 8**

25.    In June of 2020, D.B. was a fifteen-year-old minor living with her mother who began chatting online with Coles.

26.    After several online Instagram interactions, D.B. agreed to meet Coles in person.

27.    Coles told D.B. that she could be his girlfriend and come to live with him at his home; Coles sent an Uber to retrieve D.B. to bring her to his home.

28.    Coles began selling D.B. for sex and physically abusing her only a couple of weeks after she moved into his home.

29.    Almost immediately, Coles beat D.B. and began taking D.B. to the Super 8 to sell her for sex. Coles told D.B. that the money would be going to him.

30. Between approximately June of 2020 and December 2020, D.B., who was sixteen years old, was forced to have sex for money at Defendants' Super 8.

31. D.B.'s trafficker, Coles, rented rooms at the Super 8 from Defendants for use in trafficking D.B.

32. Upon information and belief, D.B. was forced to have sex for money numerous times with the purported onsite maintenance man at the Super 8 during this time period.

33. Upon information and belief, the onsite maintenance was also renting a room at the Super 8 that was used in trafficking D.B.

34. Defendants collected revenue from the rental of the rooms at the Super 8 where D.B. was forced to have sex.

35. To control D.B. during the duration of her stay at the Super 8, Coles would threaten D.B. with violence if she did not continue to perform sex work at the Super 8.

36. Coles physically abused D.B. repeatedly during the duration of her stay at the Super 8. The abuse often included choking D.B. to the point that she had visible injuries around her neck.

37. D.B. was sexually assaulted dozens of times while at the Super 8 by various "Johns."

38. Coles took the commercial sex act proceeds.

39. Coles used a portion of the proceeds from the commercial sex acts to book lodging at the Super 8 for another night.

40. Coles also gave D.B. a small portion of the funds from the commercial sex acts, which she then used to buy snacks and drinks from the vending machine at the Super 8.

41. Upon information and belief, Coles would use Defendants' WiFi network to post advertisements for D.B. to perform sex acts, and men would thereafter assault D.B. because of these advertisements. Coles would also use Defendants' WiFi to discuss the sex trafficking venture generally. Upon information and belief, Coles paid for use of Defendants' WiFi network either through the room rental fees or a separate charge.

42. Defendants had ample opportunity to observe the age and appearance of D.B. as she frequently appeared around the Super 8, including the common areas and approaching, wearing little clothing and speaking with adult men.

43. When housekeeping requested to clean the room Coles and D.B. were in, Coles would decline and instead, request additional towels and tissues.

44. One at least one occasion, D.B. went to the front desk clerk to request towels at the end of the night.

45. D.B. was forced (through coercion, violence, and threats of violence) to have sex with men in exchange for money in rooms at the Super 8 that either Coles, his associates, or the maintenance man rented from Defendants.

46. Coles took the money form the sex acts and used it to rent additional rooms from Defendants at the Super 8, and then Coles again forced (through coercion, violence, and threats of violence) D.B. to have sex with men in exchange for money in the rooms.

47. Defendants' staff and agents observed the following numerous, well-known, and visible signs of a minor sex trafficking victim that D.B. and her trafficker exhibited:

    a. D.B. was very young (approximately 16 years old) and Coles was much older (approximately 26 years old) but not old enough to be D.B.'s father;

    b. D.B. was malnourished, lacked appropriate hygiene, appeared sleep deprived, and had signs of physical injury;

    c. D.B. was nearly always on drugs during her stays;

    d. Coles and his associates rented rooms by the day and would usually pay with cash;

    e. D.B. had no control over money;

    f. D.B. and/or Coles consistently and excessively requested towels from housekeeping;

    g. There would be a large number of used condoms in the rooms rented by Coles;

h. Coles would sometimes be with other young girls in addition to D.B.;

i. D.B. was not wearing appropriate clothing for her age and was often wearing very little clothing or revealing clothing;

j. D.B. was often seen on the property loitering and associating with male patrons who were much older than she was;

k. D.B. was being monitored by Coles; and

l. There was heavy foot traffic outside of D.B.'s hotel room with a constant stream of male visitors entering the room one at a time, staying a short period, and then leaving.

## DEFENDANTS HAD EXTENSIVE KNOWLEDGE OF TRAFFICKING AT THE SUPER 8

### A. The Industry Knowledge

48. Defendants knew or should have known of the existence of sex trafficking and its illegality since the passage of the Trafficking Victims Protection Act in 2000, and the United Nations' Palermo Protocol to Prevent, Suppress, and Punish Trafficking in Persons, Especially Women and Children also in 2000, and the passage of O.C.G.A. § 16-5-46 in 2007.

49. Defendants knew or should have known that, in 2013, the acting Attorney General Sam Olens announced a statewide campaign, "Georgia's Not Buying It," to combat child sex trafficking. As part of the campaign, AG Olens'

office "collaborated with partners to conduct trainings and increase awareness," which included "multiple trainings for the hotel industry."[1]

50. Defendants knew or should have known that the Georgia legislature passed O.C.G.A. § 16-5-47 in 2013, which required hotels to post sex trafficking notices "in each public restroom for the business or establishment and either in a conspicuous place near the public entrance of the business or establishment or in another conspicuous location in clear view of the public and employees where similar notices are customarily posted…"

51. Defendants knew or should have known that the Federal Bureau of Investigations ranked Atlanta one of the worst cities in the country for child sex trafficking.[2]

52. Defendants knew or should have known that as early as 2001, City of Atlanta officials publicly warned of sex trafficking at area hotels and of the relationship between prostitution and sex trafficking. At that time, the Atlanta Journal-Constitution published a groundbreaking series called *Selling Atlanta's*

---

[1] *See* https://law.georgia.gov/press-releases/2013-03-18/attorney-general-olens-law-enforcement-announce-campaign-fight-sex (last visited Sept. 12, 2025).

[2] Chris Swecker testimony to the Commission on Security and Cooperation in Europe United States Helsinki Commission, Exploiting Americans on American Soil: Domestic Trafficking Exposed, The Federal Bureau of Investigation, (June 7, 2005), available at https://archives.fbi.gov/archives/news/testimony/exploiting-americans-on-american-soil-domestic-trafficking-exposed (last visited Sept. 12, 2025).

*Children*, explaining the problem of sex trafficking in the City and that hotels are complicit in sex trafficking trade.[3]

53.     Defendants knew or should have known of the Atlanta metro-area's well-publicized reputation as an "epicenter for human trafficking, and particularly child sex trafficking," and as "the number one city for child sex trafficking."[4]

54.     Defendants knew or should have known that in 2007, the Atlanta metro-area's sex trafficking economy was worth almost $300 million annually with traffickers reporting average *weekly* earnings of roughly $33,000.[5]

55.     Defendants knew or should have known that, compared to other types of businesses,[6] hotels play a critical role in sex trafficking ventures and serve as "a

---

[3] Jane O. Hansen, *Selling Atlanta's Children: Runaway Girls Lured into the Sex Trade are being Jailed for Crimes while their Adult Pimps go Free*, The Atlanta Journal-Constitution, Jan. 7, 2001; Jane O. Hansen, *The Pimps: Prostitution's Middle Man Slides by in Court*, The Atlanta Journal-Constitution, Jan. 7, 2001; Jane O. Hansen, *Feds, Police Elsewhere Finding Solutions*, The Atlanta Journal-Constitution, Jan. 8, 2001 ("Atlanta City Councilman Derrick Boazman said it's also time to crack down on hotels where adult men take children. '***We need to go after these hotel owners who should know what's happening when someone walks in with a 13-year-old girl***,' Boazman said."); Jane O. Hansen, *When Danger is as Close as a Phone*, The Atlanta Journal-Constitution, Jan. 9, 2001; Jane O. Hansen, *Police Plan Child Prostitution Unit*, The Atlanta Journal-Constitution, April 28, 2001.

[4] Sally Yates, *Remarks at Justice Department Event Marking National Slavery and Human Trafficking Prevention Month*, Jan. 29, 2015 *available at* https://www.justice.gov/archives/opa/speech/acting-deputy-attorney-general-sally-quillian-yates-delivers-remarks-justice-department (last visited Sept. 12, 2025).

[5] Christian Boone, *Study: Atlanta's Sex Trade Highly Profitable*, Atlanta Journal-Constitution, (March 13, 2014) available at https://www.ajc.com/news/crime--law/study-atlanta-sex-trade-highly-profitable/GiuU5vZdoUo5vdUYSaOBNM/ (last visited Sept. 12, 2025).

[6] *Cf. Sun Tr. Banks, Inc. v. Killebrew*, 266 Ga. 109, 111 (1995) (Sears, J., concurring) ("[T]he banking industry itself anticipates that criminal activity will frequently occur at ATMs.");

particularly attractive site for criminal activity ranging from drug dealing and prostitution to human trafficking. Offering privacy and anonymity on the cheap, they have been employed as . . . rendezvous sites where child sex workers meet their clients on threat of violence from their procurers." *City of L.A. v. Patel*, 135 S. Ct. 2443, 2457 (2015) (Scalia, J., dissenting, joined by Chief Justice Roberts and Justice Thomas).

56. Defendants knew or should have known that, without a venue, or crime scene, a sex trafficking venture ceases to exist.

57. At all relevant times, Defendants knew or should have known that there was a heightened risk that sex trafficking could take place at their facility as compared to taking place at other locations because of: (i) extensive private sector / non-profit publications informing the public that motels were a hotbed of sex trafficking, (ii) extensive federal / state / local government testimony and press quotations informing the public that Atlanta area motels were a particular hotbed of sex trafficking, (iii) a long running expose in the premier Atlanta newspaper (the AJC) that exposed the extent of the sex trafficking problem at Atlanta area motels,

---

*Killebrew v. Sun Trust Banks*, 221 Ga. App. 679, 680-81 (1996) (physical precedent only) ("it would be difficult to say that a criminal occurrence at an ATM is unforeseeable as a matter of law. Indeed, such a conclusion could be reached only by turning 'foreseeability' into a legal term of art totally divorced from its meaning in everyday usage.")

and (iv) the general nature of Defendants' business involving renting private rooms cheaply by the day with each room having a bed where trafficking could occur.

## B. The Online Reviews

58. Defendants had actual or constructive knowledge of the publicly available online reviews from Google and TripAdvisor of the Super 8 reporting allegations of prostitution and other illicit activities occurring at the Super 8. These reviews included comments such as:

    a. I'm pretty sure **drugs were being sold and prostitution was going on**."

    b. "The room was like something out of a creepy horror movie and smelled like someone **put a torch to a whole weed plant**."

    c. "The hotel was super stinky, **smelled like someone smoked weed in the lobby**."

    d. "**Crack heads meet you 10 ft outside the door**…Never stay at this property."

    e. "**A few residents hang out and try to sell things** but 'just say no'…"

    f. "…I don't recommend anyone staying at this hotel not to mention no security my car was broken in [sic] an [sic] **a bunch of thugs hanging outside the property… I'm sure it's alotta [sic] illegal stuff going on at this hotel**."

59. The reviews quoted in this Complaint, amongst others, will be produced in discovery.

60. The online reviews provided Defendants with actual or constructive

14

knowledge of sex trafficking, commercial sex, and the foreseeable risk of future sex trafficking ventures at the Super 8.

## DEFENDANTS HAD CONSTRUCTIVE KNOWLEDGE THAT D.B. WAS BEING TRAFFICKED

61. Defendants directed, operated, supervised, monitored, managed, and/or employed all employees, managers, housekeepers, and other staff at the Super 8 at all relevant times giving Defendants knowledge of sex trafficking, including the sex trafficking that victimized D.B., and other crimes at the hotel during the relevant period.

62. The purported onsite maintenance man for the Super 8 paid for sex with D.B. and participated in her sex trafficking in the rooms at the Super 8.

63. The purported onsite maintenance man also offered to provide Coles and D.B. rooms at a cheaper rate.

64. From June 2020 through December 2020, the Super 8 had ample opportunity to observe the numerous, well-known, and visible signs of a minor sex trafficking victim that D.B. exhibited. These included, but were not limited to:

   a. D.B. was very young (16 years old) and Coles was much older (approximately 26 years old);

   b. D.B. was not wearing appropriate clothing for her age and was often wearing very little clothing or revealing clothing;

   c. D.B. was the age of someone who should be in school, but she was not in school and spent the days at the hotel;

d. D.B. would often loiter in the parking lot of the hotel and could be seen associating with men much older than she was;

e. D.B. had signs of physical injury;

f. D.B. had signs of drug use;

g. Coles would stand near or at the door of the hotel room where D.B. was; and

h. There was heavy foot traffic to and from the room where D.B. was staying.

65. When hotel housekeeping staff would come to the rooms where D.B. was being trafficked, Coles (or D.B. at Coles' direction) would refuse housekeeping's services when they asked to clean the room and instead, asked for exorbitant amounts of towels.

66. D.B.'s victimization followed a pattern that was readily observable and should have been obvious to hotel employees based on information available to the public at large and to the hotel industry, and consequently, Defendants and their employees and agents had constructive knowledge of D.B.'s sex trafficking.

67. Rather than taking reasonable steps to prevent sex trafficking, Defendants – in the quest for profits – created and maintained business models that attract, facilitate, and encourage the commercial sex market by providing a private and anonymous venue for traffickers and buyers alike.

68. D.B.'s sex trafficking at the Super 8 was a foreseeable and preventable result of Defendants failing to implement reasonable, appropriate, and adequate

measures to deter sex trafficking at the Super 8 and failing to prevent D.B.'s continued victimization by ignoring her obvious, well-known signs and indicators of sex trafficking.

## COUNT 1: TVPRA CIVIL BENEFICIARY CLAIM

69. The TVPRA, 18 U.S.C. § 1595(a), provides a civil cause of action to victims like D.B. against "whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in" minor sex trafficking or forced labor sex trafficking.

70. Defendants Bancorp and Lincoln "knowingly benefited" from D.B.'s trafficking because:

     a. Coles, D.B.'s trafficker, and the onsite maintenance man rented rooms at the Super 8;

     b. Coles used Defendants' WiFi network at the Super 8;

     c. D.B. was advertised for sex through the WiFi network and forced to have sex in the rooms; and

     d. Defendant collected revenue from the room rentals and the use of the WiFi network.

71. Defendants took part in a common undertaking involving risk or profit with Coles, the trafficker, because:

     a. Coles would pay in cash for one night at a time, booking the next night's stay before check-out time;

b. Defendants directly rented rooms to people it knew or should have known were engaged in sex trafficking, including the trafficking of D.B.;

c. Defendants were directly renting rooms to the same trafficker – Coles;

d. Defendants were directly renting rooms to a "John," the onsite maintenance man;

e. Defendants purposefully rented rooms to Coles that were near the onsite maintenance man or in a less conspicuous location to allow for more privacy and to make it more difficult for police to determine that something different – something besides a normal room rental – was occurring; and

f. Defendants owned, operated, and maintained the Super 8.

72. D.B.'s trafficker's undertaking with Defendants violated the TVPRA with respect to D.B. because:

a. Coles recruited D.B. to participate in commercial sex acts at the Super 8 by, among other reasons, stating that he would take care of her and then making her work as a prostitute;

b. Coles harbored D.B. at the Super 8 for the purpose of D.B. participating in commercial sex acts at the property;

c. Coles transported D.B. to the Super 8 for the purpose of D.B. participating in commercial sex acts on the property;

d. the commercial sex acts occurred at the Super 8, within its hotel rooms that were rented by Coles or his associates;

e. Coles used force, threats of force, fraud, and coercion to cause D.B. to participate in commercial sex acts at the Super 8;

f. Coles threatened D.B. with violence and used this tactic to cause D.B. to engage in commercial sex acts at the Super 8;

g. Coles defrauded D.B. by falsely telling her that he would take care of her, and then forcing her to work as a prostitute for him at the Super 8;

h. Coles coerced D.B. to participate in commercial sex acts at the Super 8 by threatening D.B. with physical harm if she did not continue to engage in commercial sex acts at the Super 8;

i. Coles knowingly, recruited, enticed, harbored, transported, advertised, maintained, and solicited D.B. to engage in commercial sex acts in the rooms at the Super 8 that Coles and his associates rented from Defendants;

j. buyers came to the Super 8, purchased the "right" to have sex with D.B. from Coles, and then the buyers raped D.B. at the Super 8;

k. Coles was aware that D.B. was not yet eighteen years of age but nevertheless sold her for commercial sex at the Super 8; and

l. other actions to be proven at trial.

73. The venture in which Defendants participated affected interstate commerce for numerous reasons, including the sale and use of condoms, the purchase and use of cleaning supplies from out of state, the use of the internet to post sex advertisements, the use of the internet to communicate regarding the sex trafficking venture generally, the use of interstate highways to transport D.B. to the Super 8, and other reasons to be proven at trial.

74. As shown above, Defendants had – at minimum – constructive knowledge that D.B. was being trafficked for sex at the property. *See* Fed. R. Civ. P. 9(b) ("knowledge and other conditions of a person's mind may be alleged

generally); *Sun Life Assurance Co. of Can. v. Imperial Premium Fin., LLC*, 904 F.3d 1198, 1215 (11th Cir. 2018) (same).

75. Defendants directed, operated, supervised, monitored, managed, and/or employed all employees, managers, housekeepers, and other staff at the Super 8 at all relevant times, giving Defendants knowledge of sex trafficking, including the sex trafficking that victimized D.B., and other crimes at the hotel during the relevant period.

**COUNT 2: PREMISES LIABILITY CLAIM**

76. Coles and his associate, including the onsite maintenance man, rented the rooms from Defendants at the Super 8, and D.B. was a guest of Coles and his associates. Thus, D.B. was an invitee of the Super 8.

77. At all relevant times, Defendants owed a duty to D.B. to exercise ordinary care in keeping the premises and approaches of the Super 8 safe. *See* O.C.G.A. § 51-3-1.

78. Defendants had actual and constructive knowledge of criminal activity at the Super 8 that made the repeated sex trafficking and sexual assault of D.B. foreseeable to Defendants.

79. Defendants knew or should have known the steps to take to prevent the Super 8 from being used as a venue for sex trafficking, including D.B.'s minor sex trafficking, sexual assault and other crimes perpetuated on D.B., but negligently

20

failed to deter the crimes or warn D.B.

80. Defendants were negligent and said negligence proximately caused D.B.'s injuries in the following ways:

    a.    negligently violating O.C.G.A. § 51-3-1 by failing to use ordinary care to keep the premises safe;

    b.    negligently failing to provide appropriate and effective security personnel during D.B.'s sex trafficking at the Super 8;

    c.    negligently failing to properly inspect and maintain the premises;

    d.    negligently failing to properly train and supervise their employees regarding sex trafficking and other sex crimes at the Super 8;

    e.    negligently failing to properly retain, hire, train, and supervise said employees;

    f.    negligently failing to ensure business policies, systems, and security were adequately followed and implemented;

    g.    negligently failing to respond to online reviews and publicly available information;

    h.    negligently failing to prevent loitering, pandering, prostitution and trespassing;

    i.    negligently failing to remove loiterers, panderers, prostitutes, pimps and trespassers;

    j.    negligently failing to inspect, patrol, or appropriately monitor the property;

    k.    negligently failing to provide adequate lighting and employ other available security measures, personnel, and devices, such as controlled access, adequate signage, cameras, patrols, inspections, physical, and other landscaping adjustments, and

other measures available;

l.     negligently failing to remediate a long history of crime at the Super 8;

m.    negligently failing to warn invitees of known hazards at the property;

n.     negligently representing to invitees that the property was safe; and

o.     other negligent acts that violated Georgia common

## COUNT 3: NUISANCE CLAIM

81. Defendants also had a duty NOT to aid in the creation of, and NOT to maintain, a continuous and regularly dangerous criminal condition at the Super 8.

82. Defendants were aware of the dangerous criminal condition at the Super 8 and negligently allowed that condition to continue.

83. Defendants maintained a dangerous criminal condition at the Super 8.

84. Defendants' creation of and failure to abate a nuisance caused injury to D.B.

85. Under O.C.G.A. §§ 41-1-3 and 41-1-4, Defendants are liable to D.B. for the injuries she sustained, resulting from Defendants' creation of failure to abate a nuisance, which caused D.B. injury.

## CAUSATION AND DAMAGES

86. As a direct and proximate result of Defendants' acts and omissions, D.B. suffered substantial physical, emotional, and psychological harm and other

damages.

87.     Defendants are jointly and severally liable with Coles and any other non-party actors who participated in the trafficking for the indivisible injuries that the venture proximately caused to D.B.

88.     D.B. brings each and every claim for damages permissible under the law against Defendants for injuries suffered in the incidents at issue, and to recover for all special damages, economic losses, medical expenses, necessary expenses, and all compensatory, special, actual, general, and punitive damages permissible under the law, including, but not limited to:

    a.    personal injuries;

    b.    past, present and future pain and suffering;

    c.    disability;

    d.    disfigurement;

    e.    mental anguish;

    f.    loss of the capacity for the enjoyment of life;

    g.    loss of earning capacity;

    h.    lost wages;

    i.    diminished capacity to labor;

    j.    incidental expenses;

    k.    past, present and future medical expenses;

l. permanent injuries;

m. attorneys' fees;

n. punitive damages; and

o. consequential damages to be proven at trial.

89. Punitive damages should be imposed upon Defendants without limitation or cap for their actions, which are explained more fully above.

90. Defendants are also liable for paying D.B.'s attorneys' fees and litigation expenses pursuant to the TVPRA and O.C.G.A. § 13-6-11 because Defendants have acted in bad faith in the underlying transaction as shown herein.

91. Each of the forgoing acts and omissions constitute an independent act of negligence on the part of Defendants, and one or more or all of the above stated acts were the proximate cause of the injuries and damages sustained by D.B.

## STATUTE OF LIMITATIONS

92. While D.B.'s respective incident occurred more than two years ago, D.B.'s trafficker was not convicted until March of 2024, and the statute of limitations on D.B.'s premises and nuisance claims were therefore tolled and have not expired.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff D.B. prays for a judgment against Defendants and for the following:

1) That process and summons issue requiring Defendants to appear as

provided by law to answer the allegations of the Complaint;

2) Plaintiff be awarded actual damages in amounts to be shown at trial;

3) Plaintiff be awarded all general, special, compensatory, economic, and other allowable damages in accordance with the enlightened conscience of an impartial jury from Defendants;

4) Plaintiff be awarded her attorneys' fees and case expenses as allowed by law;

5) Punitive damages be imposed upon Defendants;

6) Plaintiff be provided with a trial by jury; and

7) Plaintiff receive such other relief as this Court deems just and appropriate under the circumstances.

This 22nd day of September, 2025.

/s/ Carson L. Wynn
Matthew B. Stoddard
Ga. Bar No.: 558215
Carson L. Wynn
Ga. Bar No.: 672645
THE STODDARD FIRM
1534 N Decatur Road
Atlanta, GA 30307
P: 470-467-2200
matt@legalhelpga.com
carson@legalhelpga.com